# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| RONALD L. JENKINS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CAUSE NO. 1:08-CV-141 WL |
| ) | |
| SUPERINTENDENT, ) | |
| ) | |
| Respondent. ) | |

## OPINION AND ORDER

Ronald L. Jenkins, a *pro se* prisoner, filed this *habeas corpus* petition to challenge a prison disciplinary proceeding. (Petition for Writ of Habeas Corpus, DE 1). The respondent has complied with the order to show cause (Response to order to Show Cause, DE 7) and submitted a supporting memorandum (Memorandum in Support of Response to Order to Show Cause, DE 8) with the state administrative record. Jenkins filed a traverse. (Traverse to Response to order to Show Cause, DE 11). This case is now ripe for ruling.

## FACTUAL SUMMARY

Michael Brubaker, an Indiana Department of Corrections ("IDOC") internal affairs investigator, charged Jenkins with Class A offense number 100, which corresponds to Indiana Code § 35-45-2-1's criminal intimidation statute. (Exhibit A1, DE # 8-2 at 1). The conduct report Brubaker issued in case # WCC-08-01-539 states:

> Based on the information and evidence obtained during an investigation, this writer is charging the above offender with an A100: Violating State law: Indiana Criminal Code 35-45-2-1 "Intimidation."
> Refer to Report of Investigation for details.

*Id*.

The Report of Investigation of Incident referenced in the conduct report states:

> On January 7, 2008, this office conducted an investigation concerning extortion of money via intimidation. The following was discovered during the investigation:
> 1. Offender Ronald Jenkins #172189 admittedly received a minimum of $750 from the wife of another offender.
> 2. Receipts of these transactions were placed in the case file.
> 3. Offender #1 stated that Offender #2 was sending money to Jenkins to prevent Jenkins from raping Offender #2 again.
> 4. Offender #2 stated he had sent money to Jenkins to prevent being beaten up again.
> 5. Offender #4 stated Offender #2 had been beaten up.
> 6. Civilian #1 stated she had contacted Civilian #2 and told Civilian #2 where to send the money to be paid to Jenkins.
> 7. Civilian #2 stated she had paid over $900 to various offenders who had threatened Offender #2.
> 8. Civilian #2 stated she feared for her own safety and that of Offender #2 because she could not afford the $500 more she had been demanded to pay to Jenkins by Civilian #1.
> For further information, refer to Internal Affairs Case File #08-WCC-0009.

(Exhibit A2, DE # 8-2 at 2).

The January 31, 2008, screening report indicates Jenkins requested Officer Santimyre and Armita Redfield as witnesses. In addition he asked for the "rape kit," "photos of medical of 'beat up' offenders, and the "I.A.[1] recording." (Exhibit B, DE # 8-3 at 1). A three-member Disciplinary Hearing Board ("DHB") conducted a disciplinary hearing regarding the charged violation on February 6, 2008. The DHB found Jenkins guilty explaining, "[s]tatement read at hearing. Bd. finds Jenkins guilty. C/R supports charge of intimidation (extorting money) IA case reviewed." The sanctions imposed upon Jenkins included two hundred sixty-six (266) days loss of earned credit time and demotion in credit class. (Exhibit G, DE # 8-8).

---

[1]Internal Affairs.

In the first-level appeal Jenkins maintained he was never in the location where the incident occurred. He argued Scott Rumsey[2] "had two different statements." Additionally, Jenkins claimed the evidence denied him would have shown his innocence. Specifically, Brubaker's recorded statement that he believed the "so-called victim" (Rumsey) was lying, as well as the rape-kit and photos of Rumsey after the assault. Finally, the Offenders identified as 1,2, and 3 in the investigative report "all have different statements," Jenkins maintained. (Exhibit H1, DE # 8-9). In a supplemental statement Jenkins decried Brubaker's use, against him, of information related to the investigation of another prisoner; each prisoner should have their own internal affairs file, he asserts. (DE # 8-9 at 2). He insists Rumsey contrived the story of rape, being beat up, and intimidated as "pay back " after getting stiffed trying to buy tobacco; "there was no proof. . . . besides two inmates with different stories," he contends. (DE # 8-9 at 3-4). On appeal to the Final Reviewing Authority, Jenkins summarized the case as being "his word against mine." (DE # 8-9 at 3-4).

## DISCUSSION

Because Jenkins has a liberty interest in earned good time, he is entitled to basic procedural protections before it can be taken away for misconduct. These minimal, due process requirements are met by: (1) prior written notice of the charges; (2) an opportunity to present evidence; (3) an impartial decision maker; (4) a written statement of the evidence supporting the disciplinary action and the reasons for it; and (5) "some evidence in the record" to support the finding of guilt. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). However, this Court does not sit in *de novo* review

---

[2]Although the Report of Incident does not identify Offender # 2 by name, Jenkins undoubtedly knew from whom he received money.

of the disciplinary hearing. *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir.1988).

The DHB decided Jenkins's conduct constituted intimidation under IC 35-45-2-1 which provides in pertinent part:

> Sec. 1. (a) A person who communicates a threat to another person, with the intent:
> (1) that the other person engage in conduct against the other person's will;
> (2) that the other person be placed in fear of retaliation for a prior lawful act.

IC 35-45-2-1.

In *McPherson v. McBride*, 188 F.3d 784 (7th Cir. 1999), the United States Court of Appeals for the Seventh Circuit explained:

> In reviewing a decision for some evidence, courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis.

*Id.*, at 786 (quotations marks and citation omitted).

Jenkins contends Rumsey made up the story of rape or physical assault. Although Jenkins admittedly received $750.00, he insists Rumsey owed him the money for a drug deal; he also implies the victim may have had other motives to falsely claim he was physically assaulted. As the Respondent observes, at the disciplinary hearing, Jenkins did not expressly deny he was ever at the location of the assault. (DE # 8 at 6). The Respondent implies Jenkins changed his story while he stridently questions Rumsey's credibility and that of the confidential informants. Despite these shifting statements the Respondent contends the information Brubaker gathered and Jenkins's admission he accepted money from Rumsey's wife provides some evidence to support the DHB's determination that he was guilty of intimidation. (DE # 8 at 7).

Brubaker's investigation began after the internal affairs received information that five prisoners, including Jenkins, had threatened Rumsey and his wife if they did not pay $1000.00. Brubaker discovered that three of the five prisoners received money from Mrs. Rumsey. One of them directly threatened his life, Rumsey claimed. During the time Mrs. Rumsey sent the payments, Jenkins and Rumsey were housed together. The investigation did not uncover any evidence to corroborate Rumsey's claim of being sexually assaulted.[3] An unnamed prisoner who previously lived on "Dorm 8" once beat up Rumsey, Brubaker was told. The prisoner who gave this information also speculated that assailant might be the same person who was extorting Rumsey. He did not identify Jenkins as this individual, whose description including being a man in his "mid-twenties"; at the time Jenkins was thirty-nine. Like Jenkins, this prisoner also admitted that he received money from Rumsey but denied forcing Rumsey to pay him. Unlike Jenkins, however, evidence existed that this prisoner directly threatened Rumsey. The Respondent claims Jenkins's attack against the evidence consists of his claim that he was never in "8 Dorm" where the physical assaults reportedly occurred.(DE # 8 at 4-5).

According to the Report of Investigation, Rumsey "sent money to Jenkins to prevent being beaten up again." (DE # 8-2 at 2). At the disciplinary hearing Jenkins told the DHB "[t]here never was any rape or extortion committed." (DE #8-8). Since Jenkins did not deny getting money from the victim, the only remaining dispute was the reason for Mrs. Rumsey's payments to him. There was evidence tending to support Jenkins's defense that Rumsey did not pay the petitioner on account

---

[3] Paragraph 3 of the Report of Investigation regarding Offender # 1's claim that Rumsey "was sending money to Jenkins to prevent Jenkins from raping Offender # 2 again" (DE # 8-2 at 2) is irrelevant to the extent Brubaker found insufficient evidence to charge Jenkins with sexual assault.

of threats. Brubaker interviewed an unidentified prisoner whose story substantiated Jenkins's claim that Rumsey owed him money from an illicit business deal. This prisoner, in whom Rumsey confided that he paid money but got nothing in return, said he did not know anything about anyone assaulting Rumsey.

Applying the statute's plain language, Jenkins's guilt of intimidation hinges upon some evidence he, or someone acting on his behalf, communicated a threat to Rumsey to get him to pay the money. Nothing in the record shows Jenkins actually threatened Rumsey himself. His acknowledged intermediary, Arnita Redfield, merely conveyed payment instructions to Mrs. Rumsey, who denied anyone ever threatened her (Rumsey told his wife there were threats against them both). Jenkins sought to prove that he could not have attacked the victim on the dates and times in question. The most damning evidence against Jenkins, however, is his admission that he received money from Mrs. Rumsey. Unless the reason Rumsey instructed his wife to pay Jenkins would directly undercut the reliability of the evidence upon which the DHB relied, Jenkins's receipt of money from Mrs. Rumsey provided the requisite indicia of reliability beyond which the Court may not inquire. *Scruggs v. Jordan*, 485 F 3d 934 (7th. Cir. 2007); *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir.1996) .

The investigation showed that, within the same time span, Rumsey paid money to several prisoners besides Jenkins. Rumsey claimed one of these prisoners threatened him; this same prisoner also knew Rumsey had been beaten up. Additionally, Rumsey said this prisoner was part of a group that worked in the chow hall. All of the members of this group threatened him every time he went to eat. During the time when the relevant payments were made, Brubaker noted that Jenkins was housed in the same unit as Spencer, who bunked a few beds from the prisoner who threatened

6

Rumsey. The fact Spencer was the only prisoner among the targeted group who was on Dorm 8 with Rumsey when he was attacked suggests he was Rumsey's attacker. It appears that Rumsey, Spencer, Jenkins, and the prisoner who Rumsey said threatened him were housed together when Mrs. Rumsey paid out the money.

As the result of his investigation, Brubaker concluded all of the prisoners who received money from Mrs. Rumsey participated in an extortion ring. Proof Jenkins was not at the location when the assault against Rumsey occurred, would not directly discredit the reliability of the evidence showing the existence of this criminal enterprise and Jenkins's enrichment from it. Moreover, based upon Jenkins's assertion that Rumsey owed him a drug debt, the DHB could infer he threatened Rumsey to enforce it. It is not necessary that Rumsey did not seek to avoid having Jenkins give him another beating; it is enough that he paid Jenkins so that no one would harm him. That Rumsey's ability to avoid being beaten depended upon his paying Jenkins is circumstantial evidence Jenkins somehow communicated a threat to him. Since the DHB found Jenkins guilty, it obviously did not credit his claims of innocence. As Jenkins himself observed, the outcome of the case rested upon what the DHB believed. When the question turns upon credibility, a guilty finding reveals how the critical dispute was resolved. *Moffat v. Broyles*, 288 F.3d at 978, 981(7th Cir. 2002)(citation omitted). The record contains sufficient facts to support the DHB's determination that Jenkins was guilty of intimidation.

Next, Jenkins argues the DHB improperly used evidence from the same IA confidential file in two, separate disciplinary proceedings. (DE # 1 at 3). In his traverse Jenkins insists this caused the DHB to use "unreliable identifying information." Because information about the dates, and times of the offense was inaccurate, Jenkins maintains this case is like *Meeks* where the petitioner

7

affirmatively showed the facility had previously misidentified him with another prisoner who had the same name. This argument is simply an aspect of Jenkins's insufficient evidence claim, which the Court already addressed. Unlike the situation here, the determinative issue in the *Meeks* case was identification. Here, the identity of the person who actually assaulted Rumsey is not dispositive of the intimidation question; Jenkins's culpability turned upon the threat of future assaults. Consequently, the DHB could properly find Jenkins guilty of intimidation even if another prisoner previously assaulted Rumsey. Jenkins also contends the conduct report shows no more than the DHB found him guilty of "excepting [sic] money" a Class B offense he admitted.(DE # 11 at 9-10). But, Jenkins misstates the DHB's explanation for its determination. It actually reads "C/R supports charge of intimidation (extorting money)." (DE # 8-8 at 1). This explanation is sufficient to comply with due process.

Jenkins contends the DHB denied him the opportunity to have Arnita Redfield present as a witness at the hearing. Jenkins implies she offered to appear but was told it "wont help and is not needed." Jenkins complains the decision not to call Redfield as a witness was arbitrary, especially where Rumsey's wife was permitted to make a statement. (DE # 11 at 7). Prisoners have the right to call witnesses and present documentary evidence at a hearing that results in an extension of their incarceration time. *Pannell v. McBride*, 306 F.3d 499, 502 (7th Cir.2002) *citing Montgomery v. Anderson*, 262 F.3d 641, 642 (7th Cir.2001). However, the right is not absolute and is limited when permitting a witness would be "unduly hazardous to institutional safety and correctional goals." *Wolff v. McDonnell*, 418 U.S. at 566. Consequently, prison officials have discretion to refuse to extend the right to call witnesses when it would be inconsistent with institutional safety and correctional goals. *Id.*; *Superintendent Mass. Corr. Inst. v. Hill*, 472 U.S. at 455, 105 S.Ct. 2768;

8

*Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir.1992).

Due process requires a statement of the DHB's reasons for refusing to call a prisoner's requested witnesses at a disciplinary hearing. *Ponte v. Real*, 471 U.S. 491, 495 (1985). The reason may be explained as part of the administrative record in the disciplinary hearing or by testimony in court. *Id*. "So long as the reasons are logically related to preventing undue hazards to 'institutional safety or correctional goals', the explanation should meet the due process requirement outlined in Wolff." *Id.* The DHB explained Redfield was neither an offender or DOC employee. (DE # 8-3). Contrary to Jenkins's assertion, this explanation does not reflect that the DHB's decision resulted from an arbitrary, across-the-board policy not to produce civilian witnesses at disciplinary hearings. Even though he is a DOC employee, the DHB considered Officer Santmyre's statement in lieu of his live testimony.

Furthermore, Jenkins received the benefit of his witnesses' statements. Brubaker spoke with Redfield, who understood Rumsey owed Jenkins money. Because Redfield did not convey any threat to Mrs. Rumsey, she bolstered Jenkins's defense. Similarly, Santmyre's written statement attests that he heard Jenkins tell Brubaker that Rumsey owed him money from their business dealings. (DE # 8-5 at 1). To that degree, both statements were duplicative and redundant of the petitioner's own version of events. Since Jenkins does not have the right to cross-examine witnesses their absence did not violate due process. *Wolff*, 418 U.S. at 567.

Jenkins's complaint that the DHB violated due process, because it did not produce several other items of evidence, is meritless. The DHB did not produce the "IA recording" because of its confidential nature. This explanation comports with due process as being logically related to maintaining institutional safety or correctional goals. There was no rape kit or photographs to

produce at the hearing.

Jenkins's ground four of the petition asserts two bases for relief. The first is that the DHB denied him the right to a written statement of the reasons for its decision. The second, which he raises for the first time here, is that the DHB did not determine the confidential informants were reliable. (DE # 1 at 3). The principles of exhaustion of available state remedies and procedural default apply to prison disciplinary hearings. *Markham v. Clark*, 978 F.2d 993. 995 (7th Cir.1992). Because Jenkins did not present either of the above claims during his administrative appeal, both are defaulted. Evidently in an effort to show cause to excuse the default, Jenkins claims the library did not provide him with the information he needed until after the appeal period ended. Assuming these claims are preserved, neither presents a basis for relief.

The Respondent addresses the former claim, which he contends Jenkins waived, but completely ignores the latter. (DE # 8 at 9-10). But, as the Respondent notes the record clearly shows the DHB complied with the requirement to provide a written statement of the evidence relied upon and reasons for its decision. As regards the challenge to the reliability of the confidential informants, the Court has reviewed the entire record in this matter. That review reveals an adequate basis exists to determine the confidential information the DHB relied upon because other evidence corroborated it. *See, e.g., Wells v. Israel*, 854 F.2d 995, 998-99 (7th Cir.1988)(establishing four alternatives to prove confidential information is reliable).

Finally, Jenkins claims the conduct violation was untimely under IDOC policy. Because the constitution does not require that a prison disciplinary hearing be conducted within seven days, this claim presents no basis for *habeas corpus* relief.

Therefore, the *habeas corpus* petition is **DENIED**.

**SO ORDERED**.

**ENTERED**: March 5 , 2009.

                                              S/William C. Lee
                                             William C. Lee, Judge,
                                             United States District Court